McGarrah *v.* Southern Railway Company in Mississippi.

[79 South. 180, In Banc.]

1. Waters and Watercourses. *Railroads. Flooding lands. Prescriptive right.*

In a suit by an adjacent landowner against a railroad for damages to his land by flooding caused by a trestle and ditch leading thereto being negligently allowed to become filled up, where

the ten-year prescription period had not transpired or become completed when the trestle and ditch leading thereto was opened and this opening and ditch prevented the lands above the railroad from being flooded as long as the ditch was kept open and the plaintiff had never suffered the damage he sued for until four years prior to the bringing of the suit. In such case its prescription is not shown to have been completed or ripened in the defendant.

2. RAILROADS. *Flooding lands. Question.*

In this case, which was a suit against a railway for flooding lands by negligently allowing a trestle and ditch leading thereto to become filled up, the court held that the evidence was sufficient to allow the case to go to the jury.

APPEAL from the circuit court of Webster county. HON. H. H. RODGERS, Judge.

Suit by D. A. McGarrah against the Southern Railway Company in Mississippi. From a judgment for the defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*McKeigney & Latham,* for appellant.

The defendant could not legally collect water on one side of its railroad tracks and open culverts through its road bed and discharge water to the damage of landowners below. *Harvey* v. *Illinois Central R. R. Co.,* 72 So. 273.

And this is true even though defendant had a prescriptive right to accumulate the waters on plaintiff's land on the north side of the railroad. 72 So. 273.

As to the prescriptive right claimed by appellee to overflow plaintiff's land situated on the north side of its railroad we submit that the contention does not come within the rule laid down by this court in the case of *Crumbaugh* v. *Mobile & Ohio Railroad Company,* 62 So. 233.

It does not appear from the evidence in the case at bar that appellee had exercised the right so to overflow appellant's land continuously, openly and

adversely for a period of ten years next preceding the commencement of the suit.

It is clear from the evidence that appellee asserted no right to prevent the flow of the waters from the land on the north side of the railroad, but from time to time undertook to regulate and provide for the drainage of said land; and negotiated, through its constituted agent, with plaintiff, as shown by the uncontradicted evidence, as fully appears at page 21 of the record, to cut a ditch to drain the land on the north side of said railroad embankment. And this was about four years before the suit was filed, as shown by the evidence.

In view of defendant's conduct, we submit that no prescriptive right was acquired; that defendant's negotiation with plaintiff to cut ditch as shown by the evidence at page 21 is conclusive that defendant claimed no prescriptive right to overflow plaintiff's land on the north side of the railroad prior to the commencement of this suit.

The facts in evidence do not support such right, but on the contrary, negative same.

We respectfully submit that the judgment should be reversed.

*Catchings & Catchings,* for appellee.

We submit that there was nothing in the alleged "negotiation" to take the case out of the rule announced by this court in *Crumbaugh* v. *M & O. R. Co.,* 62 So. 233. This was a case where a natural watercourse had been changed by the railway company; the plaintiff's lands overflowed as a result, and this court said:

"The continuous flowage of the upper land is sufficient notice that the use is claimed to be adverse. When the right has been acquired by prescription it is as absolute as any other right. The right may

be obtained whether the obstruction to the flow of the stream is a natural or artificial one.

"The prescriptive period in this state is ten years. In the present case it is proved beyond dispute that the flow of water of the creek in the new or present channel has been for over twenty years. It is also shown that the easement has continued, not only without interruption, but also it has been adverse, exclusive, open, and notorious. Therefore, the easement for the flow of the water has become a prescriptive right."

As for the land north of the track which the plaintiff claimed was overflowed as a result of closing the opening in the track over the old watercourse, we think the company's prescriptive right is clearly established by the plaintiff's own testimony; and he can't claim to have been hurt, because it was closed when he bought the land eleven years before. *Marion County* v. *Clark,* 94 U. S. 278, 924 L. Ed. 61.

Because of the prescriptive right acquired to close the trestle where plaintiff claims there was once a natural drain, the same having been closed when he acquired the land eleven years before; because of his failure to offer evidence to show that the company could have taken care of the flow of the surface waters from his lands without great expense and increased danger to the operation of its road; because of his failure to show any negligence or improper construction in the building of the thirty-five foot trestle where the roadbed and track pass over Sander's lands to the west of plaintiff, and to show that the same is not essential to the proper operation of the road; because his land is in Big Black River swamp and is naturally subject to overflow; and because of the vague and hazy evidence as to his damage; we submit that the rule laid down by the United States supreme court, herein set out, was properly applied

by the trial court, and, therefore, the judgment should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, McGarrah, sued the Southern Railway Company in Mississippi for injury to his lands caused by flooding land above the railroad track and also by flooding certain pasture land below the track, alleging that when the Southern Railway Company of Mississippi was constructed that there was a natural drain or branch flowing under the track whereby the waters from the surrounding country flowing through Mile Branch passed under the track of the Southern Railway and through the channel into Big Black river; that said opening was of sufficient size to admit the free passage of water, and was kept open until a period of about ten years preceding the filing of this suit, when the defendant improperly filled in the channel of Mile Branch under its track, and undertook to put in artificial drainage by means of small culvert and a ditch some distance west of where said Mile Branch formerly went under the track; that subsequent and about four years before filing the suit defendant made a large opening in its roadbed, a great distance west of said culvert, for the passage of water accumulating from said water course and from surface water on the north side, and undertook to convey said water to the last-mentioned opening by means of a ditch; that the said change was negligently and improperly made by the defendant without the consent of the plaintiff, and in disregard of his rights; that by means of said negligent and improper change both the surface creek and surface waters were caused to flow in large quantities upon sixty-five acres of plaintiff's land situated south of said railroad and contiguous thereto, said waters depositing great quantities of silt, sand, and clay, in-

juring the pasture of plaintiff to such an extent that the cattle will not eat the grass growing on said land covered with silt, sand, and clay; that the defendant negligently permitted the ditch on the north side of the railroad embankment to fill up so as to cause the water to back upon about fifteen acres of plaintiff's farm land on the north side of the track so as to render it impossible for plaintiff to cultivate it, and the rental value of the fifteen acres was six dollars per acre per annum; that plaintiff's damage was seven hundred and fifty dollars. The defendant pleaded the general issue, and gave notice under the general issue that it would prove that the opening through which the water from the water course mentioned in the declaration was discontinued, and an artifical drain, consisting of a culvert through and under its roadbed at a point west of the opening, was provided at the request of the owner of the land; second, that the opening through which the water course mentioned in the declaration passed across the defendant's right of way, was discontinued, and an artificial drain, consisting of a culvert through and under its roadbed at a point west of said opening, was provided more than ten years before the filing of plaintiff's suit, and that said charge was continued openly, notoriously, and adversely for a period of ten years before the filing of plaintiff's suit, and that by reason thereof defendant acquired a right by prescription to have the waters flow in the manner resulting from said change; and, third, that Big Black creek runs south of defendant's right of way at a distance of about three-quarters of a mile from said trestle and large opening in defendant's roadbed, and that plaintiff's sixty-five acres of land lie south of defendant's roadbed, and said fifteen acres lie north of the roadbed, and that said land, both north and south of said trestle, is low and flat, and subject to overflow after heavy rains by water backing up from Big Black creek, and at times overflows both sides of

the trestle and large opening. At the conclusion of plaintiff's evidence, the circuit judge sustained a motion to strike out the evidence of the plaintiff, and gave a peremptory instruction for the defendant, from which judgment this appeal is prosecuted, and the action of the court assigned for error.

Taking the record and looking over it critically, we think there is enough evidence to warrant a verdict for the plaintiff. The plaintiff testified: That about four years before the trial the company had a ditch dug down the railroad, and before this there was about a mile of branch or longer with some little tributaries, and the water ran in there, and they dug a ditch down the railroad, and made an opening somewhere about the line between the witness and one Mr. Pittman. That the drainage made by the railroad was insufficient for the purpose of carrying off the water, and that the ditch so dug filled up and caused the water to back up on his land. The branch referred to is called Mile Branch, and comes to the railroad where the water course used to be, and they ditched it down the railroad about a quarter of a mile, and made an opening across the railroad, and threw the water upon the land below the track without any outlet. That by reason of the overflow his crop above the railroad had been drowned out by the ponding of water upon the land during the rains or freshets. That the rental value of this land was six dollars per acre, and there were ten acres in cultivation. That he had been unable to work this land for the four years preceding the trial, by reason of this overflow and backing water. He testified, further, that near his barn about an acre of his land had been badly washed by reason of this condition, and that beginning about four years before the bringing of the suit. He also testified that by reason of the new opening made about four years ago, and the diverting of the water from its natural course and discharging it in an unusual way, his pasture land be-

low the railroad had been flooded and damaged, and that there were about sixty-five acres of said pasture; that the water after the rains would stand two or three days and leave a sediment of sand and mud upon the grass, and same would remain upon the grass until washed off either by the dew or rain; that he had had as high as forty head of cattle at one time upon his pasture, and they were prevented from eating the grass for as long as ten days at a time; the pasture had been thus affected for four years; that the rental value of a pasture for cows and horses was one dollar per head; that this was a reasonable value, and that under ordinary conditions without an overflow he could keep fifty or sixty head of cattle upon his pasture; that he was deprived of his pasture during the spring months but in the summer it was not so bad; that about four years before this suit Mr. Pittman and Mr. Sanders had a suit against the railroad, and that this trestle through which the water now passes was placed where it is a compromise and settlement of a suit between Sanders and Pittman and the railroad; that the agent of the railroad at that time came to him and wanted to put an opening at the edge of plaintiff's field west of the crossing and switch, and that plaintiff objected to it and proposed to give them a right of way through the best land, and to cut the ditch there for them, through the old water course, at and for the sum of one hundred and twenty-five dollars, which was one-half the amount it would cost them to dig the ditch; that the agent of the railroad company and the plaintiff agreed on this, but when the contract was sent in, the railroad company changed the contract from one hundred and twenty-five dollars to sixty-two dollars and fifty cents, and he declined to accept the modified contract and never signed it. His testimony is corroborated and strengthened by the evidence of other witnesses, and it is clear from the proof that the ditch dug about four

years before the trial of the suit had not been kept open and had become filled up. It appears further from the plaintiff and his witnesses that the original drain of Mile Branch was filled up more than ten years before the bringing of this suit, varying from eleven years to fourteen years before the filing of the suit.

It appears that the ten year prescription period had not transpired or become completed when the new trestle and the ditch leading thereto was opened, and, inasmuch as this opening and ditch prevented the lands above the railroad from being flooded as long as the ditch was kept open, and the proof shows that plaintiff had never suffered the damage he sued for until four years prior to the bringing of the suit, the prescription is not shown in this proof to have been completed or ripened in the defendant as stated at the beginning of this suit.

As stated above, the proof is badly developed in the record, and there is irrelevant matter introduced in evidence, making the testimony rather incorherent. We think, however, the proof was sufficient to have gone to the jury, and the jury could find from the proof the plaintiff's damages. Accordingly the judgment is reversed, and the cause remamded for a new trial.

*Reversed and remanded.*

Stevens, J. (dissenting).

I do not place the same interpretation upon the declaration and the testimony in this case as do my Associates. In one portion of the declaration plaintiff claims damages from the defendant company for letting the water accumulate above the railroad track in such way as to flood the lands of the plaintiff situated on the upper side of the railroad right of way. In another portion of the declaration plaintiff complains that the railroad company by an opening under the track has permitted the waters from above the

right of way to run under the track and onto plaintiff's lands below, and thereby to wash and otherwise damage these lands situated below the track. The same lands are involved in this suit, and if the plaintiff can in the same declaration recover damages for water that stands above the track and for water that flows under the track onto the lands below them he has a sure shot in this case, and most any man owning lands through which the railroad right of way runs could file a similar action. In other words, it is a case where the plaintiff in one declaration complains that the defendant did not have a sufficient culvert or opening to drain off the waters, and yet camplains that too much water comes through the openings or culvert, which the railroad company is in fact maintaining. If the plaintiff can maintain successfully this suit without electing one of the two grounds of complaint, then the defendant must stoically and fatefully resign itself to the conclusion, ''I am damned if I do and damned if I don't.''